**UNITED STATES of America,
Respondent,**

v.

**BAY, Larry E., Petitioner.**

**No. 87–1439.**

United States Court of Appeals,
Third Circuit.

Submitted under Rule 12(6)
June 10, 1988.

Decided July 12, 1988.

Rehearing Denied Aug. 18, 1988.

David B. Byrne, Jr., Robison & Belser, P.A., Montgomery, Ala., for petitioner.

Edward S.G. Dennis, Jr., Walter S. Batty, Jr., Bucky P. Mansuy, U.S. Attorney's Office, Philadelphia, Pa., for respondent.

Before BECKER, GREENBERG and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This case is before this court on remand from the Supreme Court, —— U.S. ——, 108 S.Ct. 1724, 100 L.Ed.2d 189. The panel, in a memorandum opinion filed December 28, 1987, affirmed Bay's convictions and rejected all of Bay's arguments on appeal. One of the issues appealed was the district court's refusal to instruct the jury on the defense of entrapment. The court based its ruling on the law of this circuit that a defendant who admits committing the charged act but denied *mens rea*, as did Bay, may not assert the entrapment defense. *See United States v. Hill*, 655 F.2d 512 (3d Cir.1981). Because this panel was bound by the rule of *Hill*, the district court was affirmed on this issue.

Bay petitioned for certiorari, and while the petition was pending, the Supreme Court decided *Mathews v. United States*, —— U.S. ——, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). In that decision, the Court resolved a split among the circuits, and held that a defendant need not admit *mens rea* in order to assert entrapment, thereby implicitly overruling *Hill*. The Court thereafter granted Bay's petition, vacated this court's decision, and remanded for further consideration in light of *Mathews*. We will now remand to the district court for a limited hearing to determine the legal question of whether Bay can produce sufficient evidence to warrant presenting the entrapment defense to a jury. Aside from the issue of entrapment, we reject all other issues raised in Bay's appeal for reasons stated in our original memorandum opinion.

## BACKGROUND

This case arises out of a grand jury investigation of corruption among government contractors. In late 1985, the Defense Personnel Support Center ("DPSC") solicited bids on a trouser contract. One of the bids came from Coastal Industries, of Selma, Alabama ("Coastal"), with which Larry Bay was affiliated. Another bid was submitted by T.H. Apparels, Inc. of Gardena, California ("T.H. Apparels"). The grand jury, empaneled and sitting in the Eastern District of Pennsylvania, was investigating charges that during the first half of 1986, Coastal had arranged a $22,000 payment to T.H. Apparels in order to get them to withdraw their low bid. This arrangement seems to have involved as an intermediary B.G. Colton, an officer of H. Landau and Co., of Bala Cynwyd, Pennsylvania. Apparently, Colton sent to Coastal a false invoice for a non-existent shipment of cloth. In return, Coastal sent Colton a check made out to the fictitious "B.G. Mills," which Colton deposited into his personal bank account. Over several months, Colton then distributed most of that money to representatives of T.H. Apparel, and kept part of it for himself. Coastal was eventually awarded a portion of the contract, receiving total payments of over $2.5 million.

Larry Bay became involved in the investigation in April 1986, when he was contacted by FBI agents. The agents informed Bay of their identity, the nature of their investigation, and warned him of his *Miranda* rights. Bay refused to answer questions and informed the agents that he was represented by counsel. On October 24, 1986, Bay was served with a subpoena ordering him to appear before a grand jury on November 4, 1986. Prior to his appearance, Bay and his lawyer met with representatives of the U.S. Attorney, and Bay's attorney stated that Bay intended to refuse to answer questions. On November 4, 1986, Bay appeared before the grand jury, with his attorney outside the room. Bay was advised that he was a "subject" but not a "target" of the grand jury investigation, and advised of his rights. Bay then invoked his Fifth Amendment rights to refuse answering questions.

Continuing its investigation, the grand jury subpoenaed Coastal on January 5, 1987, requiring the production of, *inter alia*, records of transactions with H. Landau and Co. and with B.G. Mills. Unknown to Bay, by that time Emanuel Landau ("Landau"), the president of H. Landau and Co., had agreed to cooperate with the government in its investigation; both he and his company later entered guilty pleas

in charges related to the corruption at the DPSC. Not knowing of Landau's cooperation with the government, on January 7, 1987, Bay's wife called Landau and asked him to call Bay in about an hour, and to use a "clean" phone.

After speaking with Bay's wife, Landau called his attorney and the FBI, and was advised to call Bay and tape record the conversation. Landau did so, and turned the tape over to the FBI. He was then instructed to make further taped phone calls to Bay on January 8 and 19, in an effort to draw more information out of Bay. During these conversations, Bay seems to have been attempting to get Landau's aid in having Colton cover up the scheme to pay off T.H. Apparel; the plan was to have Colton ship goods to Coastal which would match the description on the invoice sent the previous year. The three recorded conversations formed the basis for the three counts in Bay's indictment.

A trial was held, and after the close of evidence, the court instructed the jury on May 21, 1987. The charge did not include an instruction on entrapment which Bay had requested, because Bay would not admit to every element of the charged offenses, which the court required as a condition for the instruction.

The jury subsequently returned a verdict of not guilty on Count I (based on the January 7 conversation), guilty on Count II (the January 8 conversation), and guilty as to the first statement of Count III (the January 19 conversation) but not guilty as to the second statement.

On July 20, 1987, the district court denied Bay's motion for judgment of acquittal n.o.v. and entered a judgment of conviction. On the same day, the court sentenced Bay to pay a fine of $10,000 and a special assessment of $100, and to serve five years' probation, including six months in a half-way house and 300 hours of community service. Bay filed a timely notice of appeal on July 28, 1987.

## DISCUSSION

*Mathews* enlarged the range of cases in which courts must allow the entrapment defense, but it did not do so unconditionally. As the Court wrote: "We hold that even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment." 108 S.Ct. at 886. Our inquiry in the current case thus requires two steps: first, whether the record discloses sufficient evidence from which the jury could have found entrapment; and, second, whether Bay can show that he could have adduced sufficient evidence had he been given the opportunity to do so. Because we hold that the evidence actually presented did not warrant instructing the jury on entrapment, the district court did not necessarily err in refusing the requested instruction. But because we cannot resolve the second step of the inquiry, we must remand to the district court for a hearing as to what further evidence of entrapment Bay may be able to produce.

■ "[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Id., citing Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). The evidence as to inducement, as presented by Bay, fails to warrant presenting the issue to a jury. In his brief on remand, Bay lists four ways in which the record shows inducement. First, before Bay ever engaged in the conversations which formed the basis of his indictment, two Assistant United States Attorneys told Bay to become a cooperating witness, or they would find a way to indict him. Second, the recordings of the conversations "were made at the express suggestion and request of the FBI." Third, Landau, with whom Bay spoke in the taped conversation of January 8, 1987, was instructed by the FBI on how to proceed, and never had possession of the tape recording. Fourth, Landau was also instructed on how to proceed during the conversation of January 19, 1987. Appellant's Brief on Remand at 18–19.

None of this evidence has any relation to the question of inducement. First, the statement by the Assistant U.S. Attorneys, far from inducing Bay to break the law, was an undisguised recommendation that he cooperate with law enforcement officials in their investigation of a possible crime. The fact that Bay was threatened with indictment does not change the fact that he was told to obey the law, not break it. Second, it is irrelevant who made the recordings, especially since Bay did not know that the recordings were being made when he committed the charged acts. If he did not know he was being recorded, the fact that he was being recorded could not have induced or deterred his conduct. The third and fourth points are flawed because they show only how Landau knew what to say to Bay; this has nothing to do with whether Landau in any way induced Bay's conduct.

■ In addition to the irrelevance of Bay's evidence on inducement, the record shows that Bay initiated the conversations which led to his indictment and conviction, which shows Bay did not lack the predisposition to commit the crimes. Bay initially had his wife call Landau and tell him to call back from a "clean" telephone. While the ensuing conversation led to a charge of which Bay was acquitted (Count I of the three counts in Bay's indictment), Bay ended that January 7 conversation by telling Landau to talk to B.G. Colton and then call him (Bay) back. The following day, Landau called Bay, and this conversation led to Bay's indictment and conviction on Count II. The fact that Landau actually made the phone call is irrelevant; he did so in accordance with Bay's instructions of the previous day. Similarly, Bay ended the January 8 conversation by telling Landau to "keep in touch;" which may show that Bay was the true initiator of the January 19 conversation even though it was Landau who made the call. The fact that Bay initiated the January 7 call, however, should be enough to show a predisposition. None of the evidence cited by Bay in his brief on the predisposition issue, Appellant's Brief on Remand at 19, has any merit in showing a lack of predisposition.

There is thus no evidence in the record to support a finding that Bay was induced to commit the acts for which he was indicted, or that he was not predisposed to commit the crime.

■ This case is made more difficult however, because the district court made its ruling on the requirements of the entrapment defense before the start of trial. Because the court ruled prior to the presentation of evidence, Bay may have been discouraged from putting evidence in the record which would have been sufficient to reach the jury on the entrapment defense, bit he intimates, Appellant's Brief on Remand at 15, that he would adduce additional facts. In his brief on remand, Bay has not made any reference to evidence that he could have produced that would have helped his entrapment defense. However, because we cannot be sure that no such evidence exists, we will remand to the district court for a determination of that issue.

The question of whether sufficient evidence exists to present an issue to a jury is a legal one. The district court should, therefore, hold a hearing in which Bay will proffer all evidence of entrapment not already in the record. If the court decides that there is sufficient evidence to present the issue to the jury, a new trial will be required, but if Bay has no further evidence, or if the court decides that all of the evidence together still would not warrant a jury verdict, the convictions will stand.

We believe that the procedure described above is preferable to simply remanding the case for a new trial at this juncture. By doing so we ensure that Bay will obtain the benefit of the decision in *Mathews* but avoid giving him the windfall of a full new trial where *Mathews* does not require one. *Cf. Waller v. Georgia*, 467 U.S. 39, 49–50, 104 S.Ct. 2210, 2217, 81 L.Ed.2d 31 (1984); *United States v. Downing*, 753 F.2d 1224, 1243–44 (3d Cir.1985).

## CONCLUSION

For the reasons stated above, we will remand this case to the district court for

**706**

further proceedings consistent with this opinion.

## SUR PETITION FOR REHEARING

The petition for rehearing filed by Defendant–Appellant in the above entitled case having been submitted to the judges who participated in the decision of this court and no judge who concurred in the decision having asked for hearing, the petition for rehearing is denied.[1]

---

1. We note that the panel's opinion does not preclude the district court on remand from considering evidence of entrapment already in the record. All such evidence, whether already presented or proffered on remand, may be considered by the district court in deciding whether there is sufficient evidence to present the entrapment issue to the jury.