UNITED STATES of America

v.

Nicholas MARINO, Appellant.

No. 87–5339.

United States Court of Appeals,
Third Circuit.

Argued Oct. 21, 1987.

Decided Dec. 23, 1987.

Certiorari Granted May 2, 1988.

Vacated and On Remand from the
Supreme Court of the
United States May 2, 1988.

Submitted Under Rule 12(6)
Sept. 9, 1988.

Decided Feb. 23, 1989.

Michael S. Washor (argued), Washor, Greenberg and Washor, New York City, for appellant.

Daniel Gibbons (argued), Samuel P. Moulthrop, Chief, Appeals Div., U.S. Attorney's Office, Newark, N.J., for appellee.

Before HIGGINBOTHAM, SCIRICA and GARTH, Circuit Judges.

OPINION OF THE COURT

SCIRICA, Circuit Judge.

This case is before us on remand from the United States Supreme Court for fur-

ther consideration in light of *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). We will affirm Marino's conviction because (1) given the evidence of entrapment Marino presented at trial, he is not entitled to an instruction on entrapment under the standard enunciated in *Mathews*, and (2) Marino has asserted unequivocally that he has no additional evidence of entrapment to present that would justify remand for a proffer hearing, *United States v. Bay*, 852 F.2d 702 (3d Cir. 1988).

### I.

Nicholas Marino, a practicing tax attorney, was convicted of conspiring to transport stolen securities in interstate commerce and of receiving, selling and disposing of stolen securities moving in interstate commerce in violation of 18 U.S.C. §§ 2315, 2 and 371. Central to the government's case was the testimony of Morton Swirsky, who had participated in the bond transactions that led to Marino's conviction. Unknown to Marino, Swirsky was acting as a government informant at the time that he arranged to buy stolen securities from Marino.

. Morton Swirsky had been arrested for possession of stolen securities and agreed to cooperate with the government by working undercover for the Federal Bureau of Investigation. The FBI instructed Swirsky to attempt to purchase additional stolen bonds. To comply, Swirsky sought aid in finding stolen securities from a stock broker, Paul North. Swirsky told North that he was interested in buying "deep discount" bonds, which Swirsky described at trial as bonds sold at a substantial discount of their original price. App. at 755a. North then introduced Swirsky to Marino. Swirsky asked Marino to help him buy "deep discount" bonds for clients with large amounts of cash to invest. Swirsky specified that he only wanted to buy bonds

that were "usable" and that had not been reported stolen. App. at 763a. Marino told Swirsky that he "might be able to help [Swirsky] out with what [he] wanted." App. at 758a–59a.

Shortly thereafter, in a telephone conversation taped by the FBI, Swirsky told Marino that he had $340,000 to invest for one million dollars worth of bonds. App. at 764a. During the conversation, Swirsky referred to himself as "Mr. Blake," an alias that Swirsky said was suggested by Marino "to keep the transaction as nebulous as possible." App. at 763a. Swirsky and Marino then arranged to meet at a hotel, where they discussed the proposed transaction. When Swirsky asked whether Marino had brought any securities, Marino told Swirsky to follow him to his law office. According to Swirsky, upon arriving at Marino's office, Marino asked Swirsky to remove his clothes, presumably to check him for body wires. After Swirsky removed his jacket and shirt, Marino left the room briefly to speak with someone, then told Swirsky to get dressed, and informed him that he would find "what [he] wanted" under the seat of his car. Swirsky returned to his car and discovered eight $25,-000 municipal bonds under the front seat. App. at 769a–70a.[1]

Swirsky delivered the municipal bonds to FBI agents who examined the bonds and questioned whether they were authentic. App. at 772a. Consequently, Swirsky returned the bonds to Marino and told him they were unacceptable. A few days later, Marino called Swirsky to tell him that he had something for him and requested that they meet. App. at 780a–81a. They again met at a hotel, where Marino offered Swirsky ten Federal Home Loan Bonds with a face value of $100,000 each.[2] The two worked out a sale price of $350,000 for the bonds, payment of which Marino requested in small denomination, nonsequential bills. App. at 795a. According to Swirsky, Mari-

---

**1.** Marino was able to provide bonds to Swirsky because an individual named Jack Sliker, who owed Marino and his law partner $110,000, offered Marino securities for resale in order to pay his debt. Specifically, Sliker had offered

Marino $975,000 in municipal bearer bonds that Marino could sell.

**2.** Marino had also obtained these bonds from Sliker.

no gave him one of the Federal Home Loan Bonds to take with him in order to "check it out to see whether it was reported stolen or not." App. at 781a. Swirsky took the bond and the next day met Marino to obtain delivery of the other nine bonds. Marino produced four bonds for Swirsky. When Swirsky inquired as to the other five bonds, Marino gave Swirsky the keys to his car and told him that the bonds were in the glove compartment. Swirsky retrieved the bonds and delivered them to the FBI. App. at 799a. When Swirsky met Marino the following day to pay for the bonds, Marino was arrested. At trial, Marino requested an entrapment instruction. Following the close of evidence, the district court rejected this request on the ground that Marino had denied knowing that the bonds were stolen and therefore could not properly claim that he had been entrapped.

Marino was convicted by a jury and appealed. We affirmed Marino's conviction, relying on "well settled federal law in this circuit that a defendant may not contest an essential element of an offense and still claim the defense of entrapment." *United States v. Marino*, No. 87–5339, memo-op. at 5 (3d Cir. Dec. 23, 1987) (unpublished). [838 F.2d 463 (table)] Because Marino did not admit knowing the bonds were stolen, an essential element of the offense, we affirmed the district court's refusal to instruct the jury on entrapment.

Marino petitioned for writ of certiorari. On May 2, 1988, — U.S. —, 108 S.Ct. 1590, 99 L.Ed.2d 904, the Supreme Court granted the writ, vacated the judgment, and remanded the case to this court for further consideration in light of *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). On remand, we requested supplemental briefing in light of *Mathews* and *United States v. Bay*, 852 F.2d 702 (3d Cir.1988). In his supplemental brief, Marino stated that he had presented

all his evidence on entrapment at trial and that remand was not required as *Bay* was inapplicable.

## II.

Before the Supreme Court's decision in *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988), the prevailing law required the defendant to admit all the elements of the offense before he was entitled to a charge on entrapment. *See, e.g., United States v. Hill*, 655 F.2d 512 (3d Cir.1981). In *Mathews*, the Supreme Court held that a defendant could assert inconsistent defenses and could properly request a jury instruction on entrapment without admitting all the elements of the crime. 108 S.Ct. at 887.

■ "[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in criminal conduct." *Id.* at 886. We held in *United States v. El–Gawli*, 837 F.2d 142 (3d Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 55, 102 L.Ed.2d 34 (1988), that " [e]ntrapment occurs when a defendant who was not predisposed to commit the crime does so as a result of the government's inducement.' " *Id.* at 145 (quoting *United States v. Jannotti*, 673 F.2d 578, 597 (3d Cir.), *cert. denied*, 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982)). In this case, we must decide whether Marino has produced sufficient evidence of inducement to require a jury charge on entrapment.[3]

■ In *El–Gawli*, we approved the trial judge's instruction that "[a] solicitation, request or approach by law enforcement officials to engage in criminal activity, standing alone, is not an inducement." *Id.* at 149. We also approved the trial court's definition of inducement to include the fol-

---

**3.** To make an entrapment defense, Marino must produce evidence of both inducement and non-predisposition to commit the crime. *El–Gawli*, 837 F.2d at 145. Consequently, if the defendant does not produce sufficient evidence of inducement, his evidence of non-predisposition alone would not warrant an entrapment charge. *Cf. id.* at 147. Given our holding that Marino did

not produce sufficient evidence of inducement, we therefore need not consider his evidence of non-predisposition to sell stolen securities. *See also United States v. Rodriguez*, 858 F.2d 809, 812 (1st Cir.1988) (initial showing on entrapment necessitates some evidence on each of two prongs of defense).

lowing: "persuasion, fraudulent representation, threats, coercive tactics, harassment, promises of reward or pleas based on need, sympathy or friendship."[4] *Id.* Thus, *El–Gawli* defined inducement to mean more than mere solicitation. This standard is mirrored in *Mathews,* in which the Supreme Court stated:

> The Government contends as an alternative basis for affirming the judgment below that the evidence at trial was insufficient to support an instruction on the defense of entrapment. Of course evidence that government agents merely

afforded an opportunity or facilities for the commission of the crime would be insufficient to warrant such an instruction.

108 S.Ct. at 888.[5] In *Bay,* we noted that the Supreme Court in *Mathews* held that a defendant is entitled to an entrapment defense when sufficient evidence exists from which a reasonable jury could find entrapment. 852 F.2d at 704. A reasonable jury, however, could not find inducement under the standards set forth in *Mathews* and *El–Gawli* from mere evidence of solicitation by government agents.[6]

---

**4.** We noted in *El–Gawli* that this list was exemplary, and not presented to the jury as a "finite group of possibilities." 837 F.2d at 150.

**5.** In *Mathews,* the Court decided the question whether a criminal defendant could avail himself of inconsistent defenses. The Court was not required to decide the quantum of evidence sufficient to warrant a jury charge on entrapment. Nevertheless, we believe we must follow the *Mathews* Court's suggestion as to what constitutes sufficient evidence for an entrapment charge.

**6.** Marino cites this court's decision in *United States v. Watson,* 489 F.2d 504 (3d Cir.1973), for the proposition that mere evidence of government initiation is sufficient to take the entrapment defense to the jury. *Watson* adopted this "workable test" from the Second Circuit. 489 F.2d at 509 (citing *United States v. Riley,* 363 F.2d 955, 958–59 (2d Cir.1966)). In *Riley,* the Second Circuit stated that inducement "goes simply to the Government's initiation of the crime and not to the degree of pressure exerted." *Riley,* 363 F.2d at 958. Under the "bifurcated approach"—the split burden of proof on entrapment adopted in *Riley*—this standard might well have been justified because the defendant bore the burden of proof on inducement. However, under the unitary approach enunciated in *United States v. Jannotti,* 729 F.2d 213, 224 (3d Cir.), *cert. denied,* 469 U.S. 880, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984), and *El–Gawli,* the defendant only carries the burden of production on the defense. In *El–Gawli,* we held:

> Under our jurisprudence, to make an entrapment defense a defendant must come forward with some evidence as to both inducement and non-predisposition. After the defendant has made this showing, which is a burden of production, the government then has the burden of proving beyond a reasonable doubt that it did not entrap the defendant. This court thus follows the so-called unitary approach, whereby after the defendant has made his original showing, the burden falls

on the prosecution to prove beyond a reasonable doubt that the defendant was not entrapped.

837 F.2d at 145. Indeed, in *El–Gawli,* we pointed out that our approach was "distinct from the 'bifurcated approach' adopted by ... the Second Circuit," a standard which we rejected because of "our disapproval of the fact that it required the defendant to shoulder a substantial burden in making this defense." *Id.* at 145–46. As we have noted, *El–Gawli* approved the trial court's jury instruction that "[a] solicitation, request, or approach by law enforcement officials to engage in criminal activity, standing alone, is not an inducement," *id.* at 149, and stated the following:

> [W]e hold that this statement accurately summarizes the definition of inducement. We note that at least two jurisdictions besides the Court of Appeals for the District of Columbia, which authored part of the charge, employ similar principles. *See United States v. Barry,* 814 F.2d 1400, 1402 n. 2 (9th Cir.1987) ("Inducement requires more than mere suggestion of solicitation by a government agent.") (citation omitted); *United States v. Velasquez,* 802 F.2d 104, 106 (4th Cir.1986) (evidence of mere solicitation insufficient to meet even minimal burden of coming forth with more than a scintilla of evidence of inducement)....

837 F.2d at 149 (footnote omitted).

Whatever the content of the term "solicitation," it is evident that in the entrapment context, evidence of mere solicitation standing alone cannot constitute inducement. This being so, evidence of solicitation, without more, cannot support a jury instruction on the issue of entrapment. Thus, whatever the precedential viability of *Watson* where the evidence has been introduced that the Government initiated the crime (however the term "initiated" may be construed), *El–Gawli* has now decreed that in this Circuit, as in others, evidence of mere solicitation, as a matter of law, is not germane to the jury's determination of entrapment.

Indeed, many courts have rejected the *Riley* definition of inducement based on the view that

Other courts of appeals require something more than mere solicitation before they find a defendant entitled to an entrapment charge. For example, in *United States v. Rodriguez*, 858 F.2d 809 (1st Cir. 1988), the Court of Appeals for the First Circuit noted that, although no bright-line rule existed as to the quantum of proof necessary to warrant an entrapment charge, the threshold is not overcome by a showing of mere solicitation or by a defendant's conclusory or self-serving statements. *Id.* at 812–13. *See also United States v. Luce*, 726 F.2d 47, 49 (1st Cir. 1984) (evidence must show that defendant was "unready" to commit the offense or that he was "corrupted" by government agents before entrapment defense may be submitted to jury); *United States v. Velasquez*, 802 F.2d 104, 106 (4th Cir.1986) (evidence of solicitation not enough to show inducement and thus make entrapment question for jury); *United States v. Ortiz*, 804 F.2d 1161, 1165 (10th Cir.1986) (trial judge did not err in refusing to give entrapment instruction when evidence revealed only that government agent solicited, requested, or approached the defendant to engage in criminal conduct); *United States v. Andrews*, 765 F.2d 1491, 1499 (11th Cir. 1985) (defendant seeking to raise entrapment defense must show that "the government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it"; defendant need demonstrate an element of persuasion or mild coercion), *cert. denied*, 474 U.S. 1064, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986); *United States v. Parr*, 716 F.2d 796, 803 (11th Cir.1983) (initial approach by government does not require entrapment instruction); *United States v. Burkley*, 591 F.2d 903, 914 (D.C.Cir.1978) (trial judge must give entrapment instruction if there is any foundation in the evidence that he was induced, i.e. that there existed persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, pleas based on need, or other government conduct that would create the risk of causing an otherwise non-predisposed person to commit the offense), *cert. denied*, 440 U.S. 966, 99 S.Ct. 1516, 59 L.Ed.2d 782 (1979); *United States v. Christopher*, 488 F.2d 849, 850–51 (9th Cir.1973) (lone fact that government agent initially contacted defendant and provided opportunity for commission of crime not enough to require entrapment instruction); *United States v. Bradley*, 426 F.2d 148, 150 (7th Cir.1970) (mere opportunities for defendant to violate law if he were so inclined insufficient evidence of inducement to require entrapment instruction). Our holding is consistent with these opinions.

### III.

■ In this case, Marino asserts that he was entrapped by Swirsky because Swirsky induced Marino to commit the crime "by ruse, sham and false representations; [that Swirsky acted to] bait, lure and cajole [Marino] into the transactions and beguile [him] into the commission of a crime." Appellant's Supp. Brief at 6. In particular, Marino argues that he was "lured" into committing the crime because he did not know that the bonds were stolen.

Contrary to Marino's assertions, however, the record is devoid of any evidence that Swirsky induced Marino to sell him stolen securities. Marino initiated tele-

" 'solicitation by itself is not the kind of conduct that would persuade an otherwise innocent person to commit a crime.' " *United States v. Burkley*, 591 F.2d 903, 912 (D.C.Cir.1978) (quoting *United States v. DeVore*, 423 F.2d 1069, 1071 (4th Cir.1970)). For a comprehensive critique of the *Riley* standard, *see Burkley*, 591 F.2d at 910–14.

Finally, we note that the dissent challenges the "broad meaning" we have attributed to the language in *Mathews*, in which the Court stated that "evidence that agents merely afforded an opportunity or facilities for the commission of a crime would be insufficient to warrant [an en-

trapment] instruction." 108 S.Ct. at 888. We think that the distinction drawn by the dissent between the government "facilitating" the crime by providing the means to violate the law, and the government "initiating" the crime by providing the initial opportunity for criminal behavior, *see* Dissent, at 556 n. 3, is a distinction without a difference. Although both may develop into "inducement," neither alone constitutes inducement. Consequently, we believe that the standard enunciated in *El-Gawli* and the language in *Mathews* suggesting the amount of evidence necessary for an entrapment charge controls in this case.

phone calls to Swirsky and returned Swirsky's calls to consummate the securities transactions. App. at 758a, 763a, 780a, 789a, 790a and 791a. He also suggested hotels as meeting places to discuss Swirsky's proposal. App. at 791a–92a. Marino exhibited no reluctance to enter into or complete the transactions with Swirsky. Moreover, there is no evidence that Swirsky pressured Marino by means of persuasion, fraudulent representation, harassment, threats, coercive tactics, promises of reward, or pleas based on need. Swirsky merely offered Marino the opportunity to commit the offense.

Finally, Marino's argument that he was "lured" into commission of the offense because he was unaware that the bonds were stolen lacks merit. Whether Marino knew the bonds were stolen relates to intent to commit the illegal act.[7] It does not bear on whether Marino was induced to sell these securities. Accordingly, we find that Marino's evidence of mere solicitation, without more, is insufficient evidence of inducement to have justified a jury charge in this case. The trial court correctly refused to instruct the jury on entrapment.

## IV.

Under our holding in *Bay*, we must also consider whether the defendant can show that he could have adduced sufficient evidence on entrapment had he been given the opportunity to do so. 852 F.2d at 705. Before *Mathews*, a defendant was precluded from presenting evidence on entrapment if he failed to admit all the elements of the offense. Therefore, we held in *Bay* that a defendant was entitled to a limited hearing on remand to determine whether he could produce sufficient evidence to warrant a jury charge on entrapment if the district court's pre-trial ruling, rejecting an entrapment instruction, might have precluded the defendant from introducing evidence supporting an entrapment instruction. *Id.*

The circumstances of this case distinguish it from *Bay*. Here, the district court denied Marino's request for an entrapment instruction only after the trial had ended. App. at 1270–72. Both Marino and the government had presented all their evidence without any pre-trial ruling which might have limited the admission of evidence supporting an entrapment defense. Indeed, Marino has asserted unequivocally that a *Bay* hearing is inapplicable because he presented all his evidence on entrapment at trial and that on the basis of that evidence, we should find that he was entitled to an entrapment jury charge. We do not agree that Marino was entitled to an entrapment instruction.

We will not remand the case for a new trial because the trial judge did not err in refusing to give an entrapment charge; Marino's evidence of inducement was insufficient to have warranted such a charge. Remand for a proffer hearing would be futile; Marino has assured us that he has no additional evidence on entrapment. Thus, we will affirm Marino's conviction.

A. LEON HIGGINBOTHAM, Jr.,
Circuit Judge, dissenting:

I am unconvinced that affirmance of Marino's conviction on this record is the proper course. The majority's decision to affirm—in an errant departure from the internal operating procedures of this Court —is predicated upon the conclusion that a prior decision of this Court has been overruled *sub silentio* by a subsequent decision of a panel of this Court. I do not believe that result to be correct either procedurally or substantively and, accordingly, I dissent.

I was the author of this Court's opinion affirming the district court's determination that, because Marino did not admit to receiving stolen bonds knowingly, he was not entitled to an instruction of entrapment. *See United States v. Marino*, No. 87–5339, slip op. at 5 (3d Cir. Dec. 23, 1987), [838 F.2d 463 (table)] *vacated and remanded,* —— U.S. ——, 108 S.Ct. 1590, 99 L.Ed.2d 904 (1988). At the time at which it was entered, the district court's decision cor-

---

**7.** At trial, Marino testified that he did not know that the bonds he sold to Swirsky were stolen. However, Marino's law partner Stanley Gulkin

testified under a grant of immunity that he was aware that the bonds were stolen because of the low price offered by Sliker.

rectly interpreted and applied the controlling precedent of this Circuit. *See United States v. Hill,* 655 F.2d 512 (3d Cir.1981); *United States v. Jannotti,* 673 F.2d 578 (3d Cir.), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982). The district court concluded, *as a matter of law,* that because of Marino's alternate theories of defense, he was not entitled to the entrapment instruction. It did not predicate its conclusion on alternate grounds and the decision that it entered makes no reference to any evaluation of the sufficiency of the evidence of entrapment presented by Marino. *See United States v. Marino,* No. 86-36, slip op. at 4 (D.N.J. Apr. 22, 1987); *see also, United States v. Marino,* No. 86-36, Transcript of Proceedings at 12-14 (D.N.J. Sept. 29, 1986) (transcript of charging conference), *reprinted in* Appellant's Appendix at 1270-72. The Supreme Court has now instructed us that the view applied by this Court in *Hill* and *Jannotti* and in our affirmance of Marino's conviction is incorrect. *See Mathews v. United States,* 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). Because that view was the only basis for the district court's decision, I would remand for the district court to determine whether the evidence of entrapment entitled Marino to a jury instruction on that defense.[1]

The majority has incorrectly reached its conclusion to affirm predicated upon its own evaluation of the quantum of the evidence of entrapment presented. That conclusion is inconsistent with this Court's decision in *United States v. Watson,* 489 F.2d 504 (3d Cir.1973) which held that

> [t]he charge [of entrapment] *must be given,* however unreasonable the judge

would consider a verdict in favor of the defendant to be, when the accused shows (1) evidence that the Government initiated the crime, regardless of the amount of pressure applied to the defendant, and (2) *any* evidence negating the defendant's propensity to commit the crime.

*Watson,* 489 F.2d at 509 (emphases added). Moreover, this Court noted in *Watson* that in "determin[ing] whether [the defendant is] entitled to an entrapment charge.... we must resolve all conflicts in testimony in favor of the defendant ... no matter how improbable we may find the defense version of the facts." *Id.* at 507 (citation omitted). I read *Watson* as good law for this Circuit and applicable to this case.

The majority opinion implies that *Watson* is no longer viable precedent for our circuit. The majority suggests that *Watson* relied upon a theory that has been overruled by this Court's more recent opinion in *United States v. El-Gawli,* 837 F.2d 142 (3d Cir.) *cert. denied* — U.S. ——, 109 S.Ct. 55, 102 L.Ed.2d 34 (1988). *See* maj. at 552 n. 6 ("[t]hus, whatever the precedential viability of *Watson* where the evidence has been introduced that the Government initiated the crime (however the term 'initiated' may be construed), *El-Gawli* has now decreed that in this Circuit, as in others, evidence of mere solicitation, as a matter of law, is not germane to the jury's determination of entrapment"). That conclusion is wholly inconsistent with the internal procedures of our Court which provide that *only* the Court sitting *in banc* may overrule the prior decision of a panel of our Court.[2]

---

1. The question of whether this case should be remanded to the district court for its determination of the sufficiency of the evidence in support of a jury instruction of entrapment, or that the judgment of conviction should be reversed for a faulty jury instruction, is a close one. The evidence presented by Marino that the government initiated the contact for criminal activity and that he was not predisposed to commit a crime suggests that an entrapment instruction should have been given. However, in light of the fact that the district court never evaluated the sufficiency of the evidence of entrapment, I would prefer remand.

2. *See* Internal Operating Procedures of the United States Court of Appeals for the Third Circuit, Chapter 8(C) [Hearing or Rehearing In Banc]. Our rules explicitly state that

> [i]t is the tradition of this court that reported panel opinions are binding on subsequent panels. Thus, *no subsequent panel overrules a published opinion of a previous panel.* Court in banc consideration is required to overrule a published opinion of this court.

IOP Chapter 8(C) (emphasis added).

Moreover, the conclusion that *El–Gawli* overruled *Watson* is substantively incorrect.

*El–Gawli* makes no reference at all to *Watson,* and neither does it address the standard enunciated by *Watson* for *when* a defendant is entitled to an entrapment charge. Indeed, *El–Gawli* does not address the issue of *when* the entrapment charge should be given in any context. That decision concerned only the sufficiency of the charge that was given in that case in light of what the defendant had to demonstrate in order to succeed on the defense of entrapment. It did not address *whether* the charge should have been given which is the focus of *Watson.*

In the present case, Marino presented evidence that the government agent, Swirsky, initiated the contact for Marino's participation in the illicit enterprise. Marino also offered evidence of his character and testimony concerning his attempts to verify the legitimacy of the bonds and securities which he argued demonstrated a lack of predisposition to criminal activity. The majority cites evidence in the trial record that counter-balances Marino's evidence. *See* maj. at 553 (noting evidence that Marino "initiated telephone calls to Swirsky and returned Swirsky's calls to consummate the securities transactions" and that Marino suggested meeting places). The fact that the government presented evidence that showed that, despite its initiation of the contact with Marino, Marino was inclined to criminal activity, however, does not mean that Marino was not entitled to a jury instruction on entrapment.

I concede *arguendo* that the quantum of evidence referenced by the majority weighs in favor of the conclusion that Marino was not entrapped and that, as a juror, I would not have been persuaded that Marino's evidence was sufficient to enable him to prevail on that defense. That inquiry, however, is not relevant to our disposition of this appeal. The relevant inquiry is whether Marino has made a showing that the government initiated the contact and that he had a lack of predisposition to criminal conduct. *Watson,* 489 F.2d at 509. Marino

has presented such evidence and, as I read the applicable precedent of this Court, that evidence is sufficient to meet the threshold requisite for a charge of entrapment. *See United States v. Engler,* 806 F.2d 425 (3d Cir.1986) ("[t]o be entitled to an entrapment charge in this circuit, 'a defendant must first present evidence both that the government initiated the crime ... and that the defendant was otherwise not predisposed to commit the crime.' "), *cert. denied,* 481 U.S. 1019, 107 S.Ct. 1900, 95 L.Ed.2d 506 (1987). *See also United States v. Gambino,* 788 F.2d 938, 943 (3d Cir.) ("to be entitled to an entrapment charge, a defendant must first present evidence that the government initiated the crime, *regardless of the amount of pressure applied,* and that the defendant was otherwise not predisposed to commit the crime") (emphasis added), *cert. denied,* 479 U.S. 825, 107 S.Ct. 98, 93 L.Ed.2d 49 (1986). Significantly, in *Engler,* we noted that "[o]nce the defendant has proffered such evidence, *the burden shifts to the government to disprove the elements of the entrapment defense beyond a reasonable doubt." Engler,* 806 F.2d at 428 (emphasis added). On this record, the inconsistencies in the proffered evidence—no matter how this Court views that evidence—suggests that the district court, which is in a better position than this Court to evaluate the evidence, should have the opportunity on remand to determine whether an entrapment charge was warranted.

In my view, the majority also reads too much into *Mathews.* The majority suggests that that decision negates *Watson* and makes the standard for entitlement to an entrapment instruction more strict. The clear focus of *Mathews,* however, was upon the proffer of inconsistent theories of defense—not on the elements of entrapment, and the majority's suggestion that the Supreme Court's *dicta* regarding the standard for an entrapment charge overrules *Watson* or constrains the decision of this Court in the present case, *see* maj. at 552 n. 5, is simply without merit.[3]

---

**3.** Moreover, the manner by which the majority

reads the *dicta* in *Mathews* appears to me inac-

The subsequent history of *Mathews* itself, although certainly not dispositive of anything in the present case, perhaps provides the most informative guidance. After vacating the defendant's conviction, the Supreme Court remanded to the Court of Appeals for that court to consider the sufficiency of the evidence. The Court noted that that question had been "pretermitted by the Court of Appeals, and it will be open for consideration by that court on remand." *Id.* In *Mathews,* unlike in the present case, there was a compelling reason to consider the issue of sufficiency of the evidence because the government had previously challenged the sufficiency of the evidence to the district court *and* the district court had indicated that it had found the evidence of entrapment thin. *See Mathews,* 108 S.Ct. at 886 ("District Court noted that the evidence of entrapment was 'shaky at best.' "). Despite a record indicating only slight evidence of entrapment, however, the appellate court nonetheless remanded to the district court for its reconsideration of the sufficiency of the evidence of entrapment, rather than enter a conviction based upon its own evaluation. *U.S. v. Mathews,* 848 F.2d 196 (7th Cir.1988) (Table of Decisions Without Published Opinions). *Cf. United States v. Graham,* 856 F.2d 756, 763 (6th Cir.1988) (vacating a conviction in light of *Mathews* and noting that "[w]hile we would be inclined to find that there was insufficient evidence to warrant ... an [entrapment] instruction ... the district court is in a much better position than we are to evaluate the sufficiency of the evidence

that was presented and further to make the determination of whether his early ruling deterred the defendant from presenting evidence he might otherwise have presented.")

I believe that the present case is also a case that requires remand. We did not pretermit the issue of the sufficiency of the evidence because the district court did not reach that issue—even in *dicta*—in its holding. No doubt, the approach taken by the majority will make it easier for appellate judges to dispose of matters completely by appellate fact-finding. As this case demonstrates, however, that approach blurs the fundamental distinction that exists between the role of the district court and the responsibility of appellate review. In my view, the majority opinion intrudes too far upon the province of the district court which is to evaluate the evidence presented and determine in the first instance whether a jury instruction is warranted. For that reason, I respectfully dissent.

curate. In the final paragraph of the majority opinion in *Mathews,* the Court noted that "[t]he Government contends as an alternative basis for affirming the judgment below that the evidence at trial was insufficient to support an instruction on the defense of entrapment." *Mathews,* 108 S.Ct. at 888. The Court then noted that "[o]f course evidence that government agents merely afforded an opportunity or facilities for the commission of the crime would be insufficient to warrant such an instruction." *Id.* To my mind, this statement does not have the broad meaning attributed to it by the majority. It addresses only the instance in which a criminal defendant has demonstrated that the government "facilitated" the commission of a crime by providing the means. It does not address the instance in which, as Marino alleges, the government *initiated* the contact for involve-

ment in criminal activity. Certainly, both initiation and facilitation are relevant to the question of whether a criminal defendant was in fact entrapped, but they are substantively different. The former, with supporting evidence, gives rise to a presumption that the defendant was not predisposed to commit a crime which requires rebuttal by the government. For that reason, our Court has enunciated the rule that evidence of *initiation* by the government, together with other evidence of lack of predisposition to criminal activity, are sufficient to warrant a jury instruction. That test has not been called into doubt and, as I read the *dicta* in *Mathews,* even if it were controlling it would not be read accurately to require that the decision by the district court to grant an entrapment instruction on the record of this case be reversed as error.