AMBRO, Circuit Judge,
dissenting in part and concurring in part
Offered the chance to participate in a stash house robbery, Ralph Dennis agreed without hesitation. This case is thus a straightforward application of the Supreme Court’s rule that a defendant is not entitled to an entrapment instruction when the evidence shows, at most, that the Government “merely afforded an opportunity or facilities for the commission of the crime.” Mathews v. United States, 485 U.S. 58, 66, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). Despite Dennis’ eager participation, the majority concludes that the District Court was required to instruct the jury on entrapment. Because I believe that conclusion fails to follow Mathews, I respectfully dissent from that portion of the opinion. Meanwhile, I join the majority’s due process analysis but write separately to express some concerns about the practice of stash house reverse stings.
We have held, based on Mathews, that “evidence of mere solicitation, as a matter of law, is not germane to the jury’s determination of entrapment.” United States v. Marino, 868 F.2d 549, 552 n. 6 (3d Cir. 1989). In Marino, a Government informant asked an attorney to deal in stolen securities. Id. at 550. The attorney agreed and thereafter became an active participant, initiating communication with the informant and attending secretive meetings. Id. at 550-51. We held that the District Court “correctly refused to instruct the jury on entrapment” because the informant “merely offered [the defendant] the opportunity to commit the offense” and because, after receiving the offer, he “exhibited no reluctance.” Id. at 554.
Same here. As the District Court explained, the record lacks “even the slightest indication of reluctance ... to participate in this crime.” App. 96.[1] And once Dennis joined the conspiracy, he contributed enthusiastically. For instance, he brought in two other co-conspirators (John Mitchell and Terrance Hardee) and helped choreograph the planned robbery by suggesting that the crew should tie up ,the guards in the stash house.
Recognizing that mere solicitation is not enough, we have set out a non-exhaustive list of ways that a defendant can demonstrate entitlement to an entrapment instruction. These avenues include showing “persuasion, fraudulent representation, coercive tactics, [or] pleas based on need, sympathy, or friendship.” United States v. Fedroff, 874 F.2d 178, 185 (3d Cir. 1989). The majority rests its analysis primarily on the last item in the list — “pleas based on need, • sympathy, or friendship.” It contends that “Burk’s personal relationship to Dennis contributed to the operation by allowing Burk to appeal to Dennis’ sympathies based on the story of Burk’s sick mother whom Dennis had met on a number of occasions.” Maj. Op. at 691.
Though there is a low bar for getting a jury instruction on entrapment, doing so based on personal relationships is relative *697 ly difficult. See, e.g., United States v. Evans, 216 F.3d 80, 90 (D.C. Cir. 2000) (“Although we have in the past indicated that [such pleas] can satisfy the inducement prong of an entrapment defense, we have never found such a plea sufficiently strong to do so.”). But here the problem runs deeper. Though Dennis testified at length, he never said that sympathy for Burk’s mother had anything to do with his decision to join the conspiracy to rob the stash house.
The majority acknowledges this problem. It concedes that it is “true that Dennis never uttered the words that ‘friendship motivated his participation’ in the stash house scheme,” but it nonetheless finds “a plea of friendship to lie at the basis of Burk’s plea for help.” Maj. Op. at 691 n. 6. My colleagues base this conclusion on Dennis’ testimony that he told Burk that the money from the robbery “is really gonna help your mother.” Id. (quoting App. 1138). But Dennis’ recognition that the money would help Burk’s mother does not mean that this caused him to agree to the robbery. Our duty to interpret the record in Dennis’ favor does not include an obligation (or, for that matter, a license) to put words in his mouth. If Dennis had said he perceived an obligation to help Burk’s mother, the majority would be on stronger footing. But he did not, and we should not proceed as though he had.
Apart from the sympathy theory, the majority also emphasizes that the ATF did not have Dennis on its radar prior to the sting. However, it never explains how this relates to inducement. As discussed below, the Government’s selection of targets might bear on a due process analysis. But the question for our purposes is not how the Government found Dennis, but rather the methods it employed to secure his willingness to commit a crime. Ultimately, the evidence shows that Dennis did not take much (or even any) convincing.
None of this should suggest that entrapment instructions are unavailable in the context of stash house reverse stings. In fact, they frequently are required. For instance, the Seventh Circuit, sitting en banc, determined that a defendant had a right to an instruction because the Government engaged in a “concerted effort” to get him to agree to rob a stash house. United States v. Mayfield, 771 F.3d 417, 421 (7th Cir. 2014) (en banc). The defendant declined all of the initial offers, but the Government’s informant persisted by bringing up the subject “[e]ach day” over an extended period. Id. This is classic evidence of inducement.
But less than a month later, a panel of the Seventh Circuit decided another stash house reverse sting case that looks a lot more like ours, and it concluded that no entrapment instruction was required. My colleagues suggest that this second case, United States v. Blitch, 773 F.3d 837 (7th Cir. 2014), as amended on denial of reh’g and reh’g en banc (Jan. 27, 2015), is helpful to their approach. I disagree, as it is difficult to imagine a more factually similar example of why an entrapment instruction is not required here.
Let’s start with the facts of Blitch. There, as here, an ATF agent played the role of a disgruntled courier for a cartel and recruited a confidential informant to find individuals willing to rob a large quantity of drugs. Id. at 840. If anything, the informant’s incentives were more of a problem in Blitch than they were here. That is because the Blitch informant had agreed, as part of a plea, to assist in the arrest and indictment of a specific number of individuals (ten), and he was applying the stash house robbery participants toward that quota. Id. Like Rock did here, the agent in Blitch offered the defendants *698 a way out if they had cold feet; but (as Dennis did) they remained enthusiastically committed. Id. at 842. And, as was true here, the informant in Blitch was actively involved in the sting. For instance, he asked one of the defendants to find another participant, discussed how the robbers would split the haul, set up a meeting with the undercover agent, and called the crew the night before the would-be heist to provide details. Id. at 84(M2.
The panel in Blitch contrasted its facts with those in Mayfield. Whereas the latter involved a drawn-out courtship between the Government and a reluctant participant, Blitch featured a “take-it-or-leave-it proposition” where the Government merely presented a crime without extensively lobbying the defendants to participate. Id. at 845. The Court concluded that the defendants “were not subject to anything that would transform the government’s solicitation into something more than an ordinary opportunity to commit a crime,” and it rejected the argument that the “promise of obtaining a large amount of drugs, in addition to hundreds of thousands of dollars of actual cash on hand, qualifies as improper inducement.” Id. at 844~45 (internal quotation marks omitted). Thus, far from helping the majority, Blitch rejects its reasoning.
Because there is not sufficient evidence of inducement, Dennis is not entitled to a jury instruction even if he could establish a lack of predisposition. See Marino, 868 F.2d at 551 n. 3 (“Consequently, if the defendant does not produce sufficient evidence of inducement, his evidence of non-predisposition alone would not warrant an entrapment charge.”). The threshold that a defendant must cross to get an instruction is not high, but Dennis has failed to meet his burden. I would therefore affirm the District Court’s ruling on the entrapment instruction.
Dennis also raises a due process challenge. My determination that he was not entitled to an entrapment instruction does not foreclose concluding that the indictment should be’quashed due to egregious conduct by the Government. See, e.g., United States v. Jannotti, 673 F.2d 578, 608 (3d Cir. 1982) (en banc) (noting that “a finding of no entrapment does not preclude the availability of a due process defense”). As the majority notes, however, this claim falls short. I write nonetheless on this point to express my concern about the constitutional implications of stash house reverse stings.
The Government wields tremendous power in investigating crimes. Here it exercised that authority to create from whole cloth a fictitious crime and to prosecute someone for a robbery that could not have been committed. There was no stash house, no cartel, and no cocaine. This is not an isolated occurrence. According to a 2013 article, over 1,000 people have been arrested (and at least 600 have been prosecuted) in connection with attempting to rob fictitious stash houses. See Brad Heath, ATF Uses Fake Drugs, Big Bucks to Snare Suspects, USA Today, June 28, 2013, at 1A. The Constitution affords great deference to the Government’s investigative choices, but it does draw a line: indictments based on outrageous conduct cannot stand. No court of appeals has found that the Government has crossed that line in setting up a stash house reverse sting. But it appears that the Government has been tiptoeing near the line.
For instance, in United States v. Black, 733 F.3d 294 (9th Cir. 2013), the Government sent an informant into “a bad part of town” to look for strangers willing to rob a stash house. Id. at 299 (internal quotation marks omitted). The targeting was not based on any suspicion that the people approached were in any way predisposed *699 to commit the crime. The majority concluded that there was not a due process violation. Judge Noonan dissented, writing:
[T]he imaginary stash house ... gives the government essentially unchecked power to increase the number of persons drawn in as robbers by supplying the number of imaginary guards for the drugs and by supplying the amount of imaginary drugs that are supposed to be present. The power exercised by the government is not only to orchestrate the crime but to control and expand those guilty of it. I do not see how this power can be rationally exercised. No standard exists to determine the limits of the government’s discretion.
Id. at 318 (Noonan, J., dissenting). And when the Ninth Circuit declined to rehear the case en banc, Judge Reinhardt, joined by then-Chief Judge Kozinski, dissented. They wrote that the majority opinion sent “a dangerous signal that courts will uphold law enforcement tactics even though their threat to values of equality, fairness, and liberty is unmistakable.” United States v. Black, 750 F.3d 1053, 1054 (9th Cir. 2014) (Reinhardt, J., dissenting from denial of rehearing en banc).
Black is a cautionary tale about what can result if the power to create crimes is employed without constraints. Our facts are not nearly as severe. The Government did not, as it did in Black, select a defendant at random. Rather, a confidential informant provided information about Dennis’ criminal past, much of which the Government was able to corroborate, before the sting was approved. But that does not make the critique wholly inapplicable. Unlike Judge Noonan, I do not find it impossible for the Government to exercise its discretion rationally to set up stash house reverse stings. But I share the concern that this practice, if not properly checked, eventually will find itself on the wrong side of the line.
Until then, courts can only play a limited role in policing investigative priorities. We are judges and not policymakers, and our lodestar is outrageousness and not imprudence. But what we can do is distinguish our narrow constitutional analysis from a broad stamp of approval. As we explained in an analogous context, “[t]his conclusion ... should not be construed as an approval of the government’s conduct. To the contrary, we have grave doubts about the propriety of such tactics. Although we cannot say that such conduct in and of itself violates the Constitution, it may illustrate the necessity for greater oversight so that questionable police practices can be curbed before they violate our most fundamental laws.” United States v. Beverly, 723 F.2d 11, 13 (3d Cir. 1983). I echo these sentiments here.

. As the majority notes, Dennis testified that he had previously turned down other requests from Kevin Burk, the confidential informant, to commit similar crimes. The majority properly avoids suggesting that these incidents bear on inducement. Rather, it correctly contains its discussion of them to the predisposition prong. The stash house robbery was the first crime that Burk proposed to Dennis on behalf of the Government. Entrapment is concerned with inducement by the Government, not with requests made by private parties with their own agendas. See, e.g., United States v. Squillacote, 221 F.3d 542, 573 (4th Cir. 2000) (noting that a "defendant who was induced to commit a crime by a private party, without any government involvement, cannot claim that he was entrapped”).