**UNITED STATES of America, Appellee,**

v.

**Sultan EL–GAWLI, Appellant.**

**No. 86–5659.**

United States Court of Appeals, Third Circuit.

Argued Oct. 6, 1987.

Decided Jan. 19, 1988.

Rehearing and Rehearing En Banc Denied Feb. 17, 1988.
As Amended Feb. 25, 1988.

Samuel A. Alito, Jr., U.S. Atty., Marion Percell (argued), Asst. U.S. Atty., Samuel P. Moulthrop, Chief, Appeals Div., Newark, N.J., for appellee.

Alan L. Zegas (argued), Patricia Kern, West Orange, N.J., for appellant.

Before BECKER, SCIRICA and ROSENN, Circuit Judges.

### OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal from a conviction for conspiracy to export weapons without a license from the government, 22 U.S.C. § 2778(b)(2) (1982), raises two important questions concerning the entrapment defense. First, we must decide whether the district court erred in failing to instruct the jury that the government, to defeat an entrapment defense, had to prove beyond a reasonable doubt both that the appellant was not induced by the government and that he was predisposed to commit the crime. The district court instructed the jury that proof beyond a reasonable doubt of either element was sufficient. Second, we must decide whether the district court erred in its definition of inducement. Specifically, appellant contends that the court's examples of types of inducement ("including persuasion, fraudulent representation, threats, coercive tactics, harassment, promises of reward or pleas based on need, sympathy or friendship") were too limiting, and that the district court's instruction that "[a] solicitation, request or approach by law enforcement officials to engage in criminal activity, standing alone, is not an inducement," misstates the law.

For the reasons that follow, we hold that the court's instructions were proper. The charge on the government's proof in defeating an entrapment defense correctly provided that the government merely must disprove either element of the entrapment defense beyond a reasonable doubt in order to disprove the entire defense. Furthermore, we believe that the district court's charge on inducement properly defined that element of the defense. We will therefore affirm the judgment.

### I. FACTUAL AND PROCEDURAL HISTORY

Appellant Sultan El-Gawli first came to the United States from Egypt in 1968 and became an American citizen in 1977. El-Gawli is a businessman, who owns and operates, among other enterprises, a travel agency. El–Gawli first met Momdouh Zakkary Girguis (Zakkary), an Egyptian businessman, in June 1985 when Zakkary purchased airline tickets from El-Gawli's travel agency. After returning from his trip, Zakkary visited El-Gawli at the travel agency on July 31, 1985. Zakkary testified that at this meeting El-Gawli initiated discussions about procuring arms for Palestinian revolutionaries and asked Zakkary for assistance. Zakkary testified further that although he in fact had no experience in trading arms, he pretended to be familiar with arms sales in order to determine whether El-Gawli seriously contemplated purchasing arms. Zakkary testified that he perpetuated the charade, and met with El-Gawli again in August and September of 1985 to continue discussions about weapon acquisition and transport. In contrast, El-Gawli testified that no discussion of arms transpired at the first several meetings between El-Gawli and Zakkary. Because the initial contact between El-Gawli and Zakkary occurred before the United States became involved, no tapes exist of the initial meetings between the two men. One of the key issues on which the parties focused at trial was who had initiated the discussion of arms sales.

On September 19, 1985, an auditor from the United States Customs Service conducted a routine investigation of Zakkary's motor vehicle part import business. Zakkary informed the auditor of his discussions with El-Gawli. As a result of that discussion, in early October 1985, a special agent of the United States Customs Service contacted Zakkary to follow up on the information Zakkary had given to the auditor. Zakkary agreed to cooperate in the government's investigation by posing as an arms procurer and by tape recording his subsequent conversations with El-Gawli. Zakkary ultimately tape recorded six in-person meetings and five telephone conversations with El-Gawli.

The first tape recorded meeting between El-Gawli and Zakkary, on November 8, 1985 consisted of Zakkary's describing to El-Gawli a supposed liaison with an Ameri-

can soldier who could provide weapons. The next meeting between El-Gawli and Zakkary occurred on November 12, 1985 but was not tape recorded. At that meeting El-Gawli introduced Zakkary to a man named Said Hassan who was later identified as the representative of the Palestine Liberation Organization (PLO) in Saudi Arabia. According to Zakkary, Hassan told Zakkary that he needed explosives and detonation devices for the "revolution people" in the Middle East. At trial there was much dispute about this unrecorded meeting, especially over who initiated discussion of arms sales. However, both versions of events agree that, as a result of the meeting, Hassan and Zakkary decided to conduct all further communication about the arms through El-Gawli, who agreed to serve as an intermediary.

In a meeting on November 15, 1985, Zakkary quoted prices to El-Gawli for the requested explosives and detonating devices, and El-Gawli wrote down the information. In addition, Zakkary and El-Gawli negotiated over additional expenses for Zakkary. The parties agreed to a price of $12,000 for the arms and $13,000 for expenses. Additionally, at this meeting Zakkary complained of financial difficulties. El-Gawli explained that he would receive no remuneration, stating: "I am doing this for the sake of God. I am personally not going to gain anything out of it."

In subsequent conversations Zakkary informed El-Gawli of his fondness for him, of the fact that Zakkary had cancer, and that Zakkary had used his automobile as collateral in the weapons purchase. The negotiation on weapons deals also continued. On December 5, 1985, Zakkary brought a sample explosive to the travel agency and El-Gawli placed a call to Saudi Arabia to tell the PLO representative that the explosives were ready to be shipped. On December 13, 1985, El-Gawli, with Zakkary present, met with Hassan to quote prices. On December 17, 1985, Zakkary and El-Gawli met again to discuss the possibility of procuring helicopters. El-Gawli was arrested the following day. Both he and Said Hassan were charged with conspiracy to export defense articles from the United States without a license from the State Department. Because Hassan was unavailable to stand trial, El-Gawli was the sole defendant.

At trial, El-Gawli admitted that he had agreed to serve as an intermediary in the conspiracy to export explosives and that he knew such activity was wrong. El-Gawli presented character witnesses who testified that he was a respected leader in the community, an honest, conservative, and non-violent person. El-Gawli raised the affirmative defense of entrapment. He claimed that he was not predisposed to dealing with arms because he was an honest, peaceful businessman who had never engaged in weapons trade. Furthermore, he argued that Zakkary's inducement in the form of pleas based on friendship and pity, and concern that Hassan, a valued customer, might be annoyed with him, led him to participate in a conspiracy that he was otherwise disinclined to join.

The court instructed the jury as to the entrapment defense, and neither El-Gawli nor the government objected to the court's original charge. After two hours of deliberation, the jury, in considering the district court's instructions requested further instruction on the entrapment defense. The court reread its original entrapment charge and the jury returned to its deliberations. The next day the jurors renewed their question. In response, over timely objection by defense counsel, the court provided a supplementary charge which derived from this court's jurisprudence and *United States v. Burkley*, 591 F.2d 903, 913 (D.C. Cir.1978), *cert. denied*, 440 U.S. 966, 99 S.Ct. 1516, 59 L.Ed.2d 782 (1979). In its proposed charge to the jury the court had included language from *United States v. Castro*, 776 F.2d 1118, 1128 (3d Cir.1985), *cert. denied*, 475 U.S. 1029, 106 S.Ct. 1233, 89 L.Ed.2d 342 (1986) that "the government must prove beyond a reasonable doubt both that the defendant was not induced by the government to commit the crime and that he was predisposed to commit the crime." The prosecutor objected to this portion of the charge and after brief discussion convinced the court to instruct the jury that

the government only had to prove one element (either predisposition or lack of inducement) beyond a reasonable doubt. In pertinent part, the trial court instructed the jury that:

> [w]hen we deal with entrapment as raised by the defendant, it remains on the Government to prove beyond a reasonable doubt that the defendant was not induced by the Government to commit the crime or they must prove beyond a reasonable doubt that he was predisposed to commit the crime. So the burden on either the issue of inducement or predisposition remains on the Government beyond a reasonable doubt. I think your concern is what does that mean. If the defendant had no prior intent or predisposition to commit the offense charged and was induced or persuaded to do so by law enforcement officers or their agents, then he was entrapped. Inducement by law enforcement officials may take many forms, including persuasion, fraudulent representation, threats, coercive tactics, harassment, promises of reward or pleas based on need, sympathy or friendship. A solicitation, request or approach by law enforcement officials to engage in criminal activity, standing alone, is not an inducement.

(emphasis supplied).

Ninety minutes after the district court issued its supplemental instruction, the jury convicted El-Gawli of conspiracy to export explosives without a license or approval of the State Department. This appeal followed.

## II. DISCUSSION

El-Gawli contends that the district court's supplementary instruction constituted reversible error. He claims first, that the district court gave an incorrect instruction as to the government's burden in negating an entrapment defense, and second, that the district court erred in its instruction on inducement, defining that term too narrowly.

We review the district court's jury charges to decide "whether taken as a whole and viewed in light of the evidence," the charges " 'fairly and adequately' submit the issues in the case to the jury." *United States v. Fischbach & Moore, Inc.,* 750 F.2d 1183, 1196 (3d Cir.1984), *cert. denied,* 470 U.S. 1029, 105 S.Ct. 1397, 84 L.Ed.2d 785 (1985).

### A. The Government's Burden of Proof in Negating the Entrapment Defense

To address the first issue, we will briefly review the status of the entrapment defense in this jurisdiction. As we have explained, "[e]ntrapment occurs when a defendant who was not predisposed to commit the crime does so as a result of the government's inducement." *United States v. Jannotti,* 673 F.2d 578, 597 (3d Cir.), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982) (*Jannotti I*). Under our jurisprudence, to make an entrapment defense a defendant must come forward with some evidence as to both inducement and non-predisposition. After the defendant has made this showing, which is a burden of production, the government then has the burden of proving beyond a reasonable doubt that it did not entrap the defendant. This court thus follows the so-called unitary approach, whereby after the defendant has made his original showing, the burden falls on the prosecution to prove beyond a reasonable doubt that the defendant was not entrapped. *See United States v. Gambino,* 788 F.2d 938, 943 (3d Cir.) *cert. denied,* — U.S. —, 107 S.Ct. 98, 93 L.Ed.2d 49 (1986); *United States v. Jannotti,* 729 F.2d 213, 224 (3d Cir.), *cert. denied,* 469 U.S. 880, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984) (*Jannotti II*) (court giving entrapment charge "must follow the 'unitary' approach, in which the burden to disprove the entrapment defense as a whole, beyond a reasonable doubt, is placed exclusively on the government"); *Government of Virgin Islands v. Cruz,* 478 F.2d 712, 717 n. 5 (3d Cir.1973).

This court's approach is distinct from the "bifurcated approach" adopted by the Courts of Appeals for the District of Columbia and the Second Circuit. *See Jannotti II,* 729 F.2d at 224 (explaining that

under the bifurcated approach "the jury must first consider whether the defendant has met his burden on the issue of inducement"). Jurisdictions that employ the bifurcated approach have established a procedural minuet by which the defendant need only come forth with some evidence as to inducement, and then the burden shifts to the government which can either rebut the evidence as to inducement, or prove beyond a reasonable doubt that the defendant was predisposed to commit the crime. *United States v. Burkley*, 591 F.2d 903, 914–15 (D.C.Cir.1978), *cert. denied*, 440 U.S. 966, 99 S.Ct. 1516, 59 L.Ed.2d 782 (1979). In the final analysis, however, courts adopting the bifurcated approach believe that "it is appropriate to place on the defendant the ultimate burden of showing government inducement of the crime, and thus the possibility of entrapment." *Id.* at 914 (citation omitted).

A major motivation for rejecting the bifurcated approach was our disapproval of the fact that it required the defendant to shoulder a substantial burden in making this defense. *See Jannotti II*, 729 F.2d at 224 ("the unitary approach is more consistent with the government's ultimate burden of proving the defendant's guilt beyond a reasonable doubt"). *Cf. Cruz*, 478 F.2d at 717 (holding that a charge that creates the erroneous impression that the defendant must carry the burden of proof as to the positive elements of an entrapment defense constitutes reversible error if properly raised before the district court). By adopting the unitary approach, we indicated our belief that the government had the entire burden of disproving entrapment beyond a reasonable doubt. Therefore, the extent of the defendant's burden constitutes the significant distinction between the two approaches.

El-Gawli argues that the district court erred in charging the jury that the government need only disprove one element of the entrapment defense (the "or" charge). Instead, El-Gawli contends, the court should have instructed the jury that the government had the burden of proving *both* that it did not induce him *and* that he was predisposed to commit the crime (the "and" charge). He argues that the "or" charge contravenes our unitary approach because it bifurcates the entrapment defense and fails to place the burden on the government to disprove the whole defense. El-Gawli's logic is that because the entrapment defense encompasses two elements, governmental inducement and lack of predisposition, to defeat the entrapment defense, the government must disprove *both* elements.

Furthermore, El-Gawli argues that the "or" charge diverted the jury from the evidence concerning his best argument, lack of predisposition. He submits that instead of focusing on El-Gawli's lack of predisposition, the jury was able, through the alternative offered by the disjunctive charge, to determine that the government did not induce him to participate in the weapons conspiracy. Therefore, El-Gawli claims the jury ignored the heart of his entrapment defense—that he was a non-violent, respected citizen who was disinclined to participate in weapons deals or play spy.[1] El-Gawli claims that far from constituting harmless error, the instruction was decisive in El-Gawli's conviction. El-Gawli cites the fact that it took the jury only ninety minutes to reach a verdict after the court issued its supplementary instructions as an indication of the centrality of this supplementary charge to the guilty verdict.

Finally, El-Gawli relies on our holding in *Castro* for the proposition that this Court has explicitly required an "and" charge wherein the government must disprove both elements of an entrapment defense beyond a reasonable doubt. He cites our language in *Castro*, 776 F.2d at 1128, that "the government must prove beyond a reasonable doubt both that the defendant was

---

**1.** In his brief, El–Gawli emphasizes his contributions to society and his leadership in the community. El–Gawli arrived in the United States penniless and worked his way up from a baker's assistant to a successful businessman and respected community leader. He notes that no evidence whatsoever exists to imply that his thriving enterprises are illegitimate. Furthermore, he claims that he participated in the conspiracy only reluctantly to placate a valued customer and then only in response to the relentless requests of Zakkary whom he pitied.

not induced by the government to commit the crime and that he was predisposed to commit the crime" as evidence that the district court erred in its charge on entrapment.

■ The Government defends the "or" charge arguing that, as a logical matter, it must only disprove one element of the entrapment defense to disprove the entire defense. In making its argument, the government presents the following logical syllogism:

Entrapment = inducement + predisposition. Therefore, Nonentrapment = no inducement *or* predisposition.

■ We find the logic of the government's position compelling. El-Gawli's insistence that the jury was diverted from its true inquiry by the "or" charge makes no sense. If, as El-Gawli concedes in his brief and at oral argument, the jury found no governmental inducement in this case, then what, if not some predisposition on the part of El-Gawli, caused him to participate in the conspiracy? El-Gawli has called to our attention language from this court's opinions noting the importance of the government's proving beyond a reasonable doubt that the defendant was predisposed to commit the crime. *See, e.g., United States v. Gambino*, 788 F.2d 938, 944 (3d Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 98, 93 L.Ed.2d 49 (1986) (predisposition is a "key consideration"); *Jannotti II*, 729 F.2d at 224 (The "Supreme Court has clearly held that entrapment is, at bottom, a question of the defendant's predisposition and not the government's inducement, although the latter is a relevant consideration."). We think, however, that El-Gawli fails to place these statements in proper context. Where the government has induced the defendant to commit the crime, the question of predisposition rightfully becomes crucial. The government must, in those circumstances, demonstrate that it was merely laying a trap for an "unwary criminal," and not seducing some otherwise upright citizen into lawless behavior. *Sherman v. United States*, 356 U.S. 369, 372, 78 S.Ct. 819, 820, 2 L.Ed.2d 848 (1958). In this case, however, as El-Gawli himself concedes, the jury found no governmental inducement. Therefore, the emphasis in the caselaw on predisposition does not apply to this defendant.

■ Furthermore, we believe that El-Gawli makes a fundamental, conceptual error in arguing that this court's adoption of the unitary approach mandates that the government prove both elements. In instructing that the government must disprove the whole defense of entrapment, we rejected the bifurcated approach which places upon the defendant the ultimate burden of showing that he was induced. In this circuit, the government must bear the entire burden of disproving entrapment beyond a reasonable doubt. That the government bears the entire burden does not affect the fundamental truth that entrapment can be disproved in one of two ways, either by proving beyond a reasonable doubt that the defendant was not induced, or by proving beyond a reasonable doubt that he was predisposed to commit the crime.

We note that other courts of appeals, including those that have adopted the unitary approach, use the "or" formulation. *See United States v. Gunter*, 741 F.2d 151, 153 (7th Cir.1984) (government must "prove beyond a reasonable doubt that the defendant was predisposed *or* there was no Government inducement") (emphasis added); *Sagansky v. United States*, 358 F.2d 195, 203 (1st Cir.) (holding that the government would meet its burden of defeating an entrapment defense if it proved "beyond a reasonable doubt *either* that there was in fact no inducement, *or* that the defendant was predisposed....") (emphasis added), *cert. denied*, 385 U.S. 816, 87 S.Ct. 36, 17 L.Ed.2d 55 (1966). *See also United States v. Rangel*, 534 F.2d 147, 149 (9th Cir.) (ruling that even if evidence as to predisposition was inadmissible, overwhelming evidence that government had not induced defendant to commit the crime sufficed to disprove entrapment defense), *cert. denied*, 429 U.S. 854, 97 S.Ct. 147, 50 L.Ed.2d 129 (1976).

El-Gawli's argument for an "and" charge derives from our decision in *United States v. Castro*, 776 F.2d 1118 (3d Cir.1985), *cert. denied*, 475 U.S. 1029, 106 S.Ct. 1233, 89 L.Ed.2d 342 (1986). Although the argument is superficially appealing, it has, upon closer scrutiny, little merit. In *Castro*, the government charged nine defendants with attempting to sell drugs. *Castro*, one of the defendants, argued that he was not predisposed to commit the crime, and that he committed the crime only because of the government's inducement. In instructing the jury, the district court noted that the government had presented "no evidence that [Castro] was predisposed to drug activities." 776 F.2d at 1127. Therefore, the district court instructed that the key question in deciding the entrapment defense was whether the jury could "interpret the evidence as establishing that Mr. Castro was voluntarily and without any urging from the Government acting as an interpreter in the [drug] transaction." *Id.* at 1127–28. Inexplicably, the district court instructed the jury that the government must prove predisposition beyond a reasonable doubt, but failed to give an analogous instruction on the government's burden for proving inducement. On appeal, Castro asserted this as error, and this court agreed that failure to clarify the government's burden constituted error.[2] In acknowledging that the district court had indeed erred in its charge to the jury, the *Castro* court explained that:

> once the court decides to give an entrapment charge, the court must instruct the jury that the government must prove beyond a reasonable doubt both that the defendant was not induced by the government to commit the crime and that he was predisposed to commit the crime.

*Id.* at 1128 (citation omitted). We agree with El-Gawli that a reading of this language from *Castro* could appear to indicate that this court requires a conjunctive "and" charge on entrapment, requiring the government to disprove both elements. When viewed in context, however, it is plain that *Castro* does not mandate the "and" charge, but merely requires that whichever prong of the entrapment defense the jury rejects, it must reject it beyond a reasonable doubt. In *Castro*, the defendant's entrapment argument centered upon inducement, but as we have noted, the trial court only instructed the jury about the government's burden for predisposition. In light of those facts, it is clear this court was holding that the district court had to instruct the jury about the burden of proof for both elements, not that both elements had to be proved in order to defeat an entrapment defense.

The government's burden in disproving an affirmative defense of entrapment should be viewed as a logical sequence. Assuming the defendant has met his burden of coming forth with some evidence on both elements of the entrapment defense, the government may first attempt to prove beyond a reasonable doubt that it did not induce the defendant to commit the crime. If it can do so, the inquiry is over. Without inducement by the government, there can be no entrapment. Notably, that is exactly what happened in El-Gawli's case. In many cases, however, the government will have engaged in some form of inducement. In such cases, the question of predisposition is paramount and the government must prove beyond a reasonable doubt that its inducement merely facilitated the defendant who was ready and willing to commit a similar crime.[3]

---

**2.** The *Castro* panel ultimately rejected the challenge because it had not been raised by defendant's counsel in the district court. *Castro* held that the court's charge was not so egregious that it rose to the level of plain error, and therefore, given the posture of the challenge, refused to consider it.

**3.** Although we dismiss with no hesitation El–Gawli's argument that he deserved an "and" charge, we nevertheless note that there is one type of case, not presented by El–Gawli, which

presents a stronger argument for a conjunctive charge. One could postulate a case in which the government's inducement was extraordinarily heavy and the predisposition of the defendant was very slight. Under the "or" charge, the government could disprove an affirmative defense of entrapment if it proved beyond a reasonable doubt that the defendant, however slightly, was predisposed to commit the crime. Under the facts so postulated, an "or" charge might allow the government to dispose of an

### B. *The District Court's Instruction On Inducement*

El–Gawli's second argument, which he contends is intimately related to his first point, concerns the definition of inducement that the judge offered to the jury. The logic of his argument is as follows. El–Gawli claims that the overly restrictive definition of inducement led the jury to find no governmental inducement, which in turn led the jury to disregard the essential question of predisposition. We have already dismissed El–Gawli's argument that the government had to disprove both elements in order to disprove entrapment. Nevertheless, we must address his specific argument that the jury found no inducement because the district court erred in explaining the legal standard.

■ First, El–Gawli objects to the court's instruction that "[a] solicitation, request or approach by law enforcement officials to engage in criminal activity, standing alone, is not an inducement." El–Gawli argues that the quoted language incorrectly states the law in this circuit. We disagree. El–Gawli has cited no case from this court indicating that the quoted charge inaccurately portrays the law. To the contrary, we hold that this statement accurately summarizes the definition of inducement. We note that at least two jurisdictions besides the Court of Appeals for the District of Columbia, which authored this part of the charge, employ similar principles.[4] *See United States v. Barry*, 814 F.2d 1400, 1402 n. 2 (9th Cir.1987) ("Inducement requires more than mere suggestion or solicitation by a government agent.")

(citation omitted); *United States v. Velasquez*, 802 F.2d 104, 106 (4th Cir.1986) (evidence of mere solicitation insufficient to meet even defendant's minimal burden of coming forth with more than a scintilla of evidence of inducement); *United States v. North*, 746 F.2d 627, 631 (9th Cir.1984) (allowing an instruction that included language identical to the challenged instruction in El–Gawli's case), *cert. denied*, 470 U.S. 1058, 105 S.Ct. 1773, 84 L.Ed.2d 832 (1985).

■ Furthermore, El–Gawli objects to the court's charge that:

Inducement by law enforcement officials may take many forms, including persuasion, fraudulent representation, threats, coercive tactics, harassment, promises of reward or pleas based on need, sympathy or friendship.

El–Gawli cites no caselaw from this or any other court indicating any objection to the charge on inducement given by the district court. We also note that this charge, or minor variations on it, is given by other courts, including those that use the unitary approach, in explaining the concept of inducement to juries. *See, e.g., North*, 746 F.2d at 631 (holding that a district court properly exercised its discretion in instructing the jury that "undercover activity may take many forms including persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward or pleas based on need, sympathy or friendship").

El–Gawli argues that the specific examples of inducement in the charge did not encompass the full breadth of activities

---

entrapment defense unfairly. We think this dilemma can be solved, not by adopting El–Gawli's "and" charge approach, but rather by careful instruction to the jury on the definition of predisposition and the government's burden of proving it beyond a reasonable doubt.

**4.** We also find it insignificant that this language originally appeared in the "red book" of jury instructions formulated by the Bar Association of the District of Columbia and used by the District Court for the District of Columbia. *See* Young Lawyers Section of the Bar Ass'n of the Dist. of Columbia, *Criminal Jury Instructions* No. 505 at 333 (3d ed. 1978); *Burkley*, 591 F.2d at 913. El–Gawli makes the argument that it

was unfair to him for the district court to adopt a charge on inducement borrowed from a court that utilizes the bifurcated approach. See *supra* at 146 for a discussion of the bifurcated approach. In the abstract, we agree with El–Gawli that we should take care in adopting an instruction on inducement from a jurisdiction that still employs the bifurcated approach, although not for the reasons he suggests. However, we need not address this complex question or the strained logic of El–Gawli's argument because, in this particular case, we find the instruction perfectly in harmony with our jurisprudence and we see no prejudice to the defendant.

that could constitute inducement. He does not, however, explain how this charge damages his chances for a jury finding of inducement, nor does he suggest additional examples that the district court should have provided. Rather, he argues that the district court merely should have reread its general explanation of inducement without offering any examples at all. In light of the jury's confusion, we cannot agree. A list of examples, when presented as such and not as a finite group of possibilities, may be very helpful in explaining the concept of inducement. If anything, it seems to us that the court's mention of "pleas based on friendship and need" would have helped the jury find inducement had they credited El–Gawli's testimony. It is apparent to us that in this case, where the appellant received absolutely no money for acting as a middle man in a weapons transaction, the jury simply believed, beyond a reasonable doubt, that he was not induced. We therefore reject El–Gawli's challenge.

### III.

For the foregoing reasons, the judgment of the district court will be affirmed.