NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1559
_____

UNITED STATES OF AMERICA

v.

FERNANDO BELTRAN
also known as Victor Espinoza

FERNANDO BELTRAN,
Appellant
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 1-06-cr-00199-011)
District Judge: Honorable Christopher C. Conner
_____

Submitted Under Third Circuit LAR 34.1(a)
July 14, 2011

Before: RENDELL SMITH and ROTH, Circuit Judges.

(Opinion Filed: July 29, 2011)
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Fernando Beltran was convicted of various drug charges, criminal forfeitures, and

offenses relating to attempted escape from custody. Beltran only challenges his

convictions which relate to his attempt to escape custody, urging the insufficiency of the evidence. He also claims that the government offered insufficient evidence to overcome the defense of entrapment and that the two-level increase in offense level for being an organizer, leader, manager, or supervisor of a criminal activity was inappropriate. Our standard of review for sufficiency of the evidence challenges is plenary, but we will only reverse a jury verdict when the record contains no evidence from which a reasonable jury could find guilt beyond a reasonable doubt. *See United States v. Mussare*, 405 F.3d 161, 166 (3d Cir. 2005). We exercise plenary review over legal questions regarding a challenge to sentencing enhancements and review the related factual findings for clear error. *United States v. Inigo*, 925 F.2d 641, 658 (3d Cir. 1991). We will affirm.

Beltran, along with Antonio Avila, was convicted of attempted escape from custody and related offenses. The offense conduct originated when Beltran was moved to a cell with Amauris Sanchez. Shortly thereafter, Beltran approached Sanchez about taking part in an escape. Following a number of conversations, Sanchez approached authorities with the intent to cooperate. Sanchez and Karen Brown, a prison counselor, took on the role of confidential informant for the authorities. After a number of discussions between Beltran, Avila, Sanchez, and Brown, an escape plan was crafted based on a medical transport. The plan resulted in bribes to fictitious guards for a smuggled cell phone and their cooperation in the escape. Following the seizure of the second bribe – $40,000 to be used as the bribe to effectuate the actual escape – Avila and Beltran were charged.

2

Beltran's first challenge is that the government failed to offer sufficient evidence to sustain a conviction for attempted escape from custody. To prove attempted escape, the government must show intent, as well as corroborating evidence which amounts to a substantial step toward commission of the crime. *See United States v. Cicco*, 10 F.3d 980, 984 (3d Cir. 1993). The substantial step may be shown through the conduct of a co-conspirator. *See Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946). Beltran challenges the government's evidence by claiming that his initial thoughts at escape amounted to "daydreams" and the rest of the planning was done by the CIs. Therefore, he urges, the evidence does not support intent on his part. In actuality, the government showed that his intent originated when he approached Sanchez. It was his idea to break through the cinder blocks; while far-fetched, nonetheless, it showed that the idea of escape clearly started with Beltran. The government also proved his intent through numerous recorded phone calls with his sister, directing her involvement in the attempted escape, which resulted in the sister's supplying the guards with payments of $3,000 and $40,000. Additionally, as the substantial step prong may be shown through the conduct of a co-conspirator, her delivery of the funds satisfies the substantial step element. Accordingly, his challenge must fail.

For his second challenge, Beltran claims that insufficient evidence was offered to overcome the defense of entrapment. To prove the defense of entrapment, the defendant must show (1) that the government induced the defendant to commit the crime and (2) that the defendant lacked the predisposition. *United States v. El-Gawli*, 837 F.2d 142, 145 (3d Cir. 1988). Beltran's argument assumes that he sustained his burden as to the

3

elements, but he failed to show a lack of predisposition. Beltran attempts to characterize his initial thoughts of escape, which he approached Sanchez with, as daydreams due to the implausibility of cutting through the prison's cinder block walls. Beltran reasons that the implausible nature of his initial plan shows that he was not predisposed and that it was only the inducement by the CIs which resulted in his participating. The government argues that Beltran's intent was evinced by the fact that Beltran first approached Sanchez about the escape, and persisted with the effort despite Sanchez's discouragement of the initial plan. The government further points to the numerous phone calls placed by Beltran to his sister, most of which were to arrange the details about the payments needed to effectuate the escape, but also to convince his sister that the CIs could be trusted. The fact that Beltran engaged Sanchez in the initial discussion and he continually participated in the attempt, including involving his sister, is enough to prove that he was predisposed to the crime. It is clear that there was enough evidence for a reasonable jury to conclude that the defense of entrapment was unavailable to Beltran.

Beltran's final challenge is to the two-level enhancement for being an organizer, leader, manager, or supervisor of a criminal activity. Section 3B1.1 of the Sentencing Guidelines requires a two-level increase in offense level when "the defendant was an organizer, leader, manager, or supervisor in any criminal activity." Application note 2 of Section 3B1.1 states that one can qualify if they are the supervisor of one or more individuals or if they "exercised management responsibility over the property, assets, or activities of a criminal organization." Beltran argues that the escape plan was the brainchild of the CIs and, although he recruited and directed his sister, it was at the

4

direction of the CIs. The government urges that the enhancement was appropriate because he recruited his sister, Avila, and Sanchez into the attempted escape, he was a planner of the escape, and he directed his sister to send the money to bribe the fictitious guards for the cell phone and the eventual escape. The District Court found that the enhancement was warranted because Beltran was the one to initially approach all parties and he directed his sister to send the key to the plan, the money. We find no error in the District Court's reasoning.

Accordingly, we will affirm.